# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RICHARD BARINGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-15-508-STE |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the decision of the ALJ.

## I.    PROCEDURAL BACKGROUND

Plaintiff filed his applications benefits on February 28, 2012, alleging a disability beginning November 17, 2011. Both applications were denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 12-45). The Appeals Council denied Plaintiff's request for

review (TR. 1-4), thus the decision of the ALJ became the final decision of the Commissioner. This judicial appeal followed.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920. Plaintiff has the burden of proving disability through the first four steps of the evaluation.

### A. Step One—Substantial Gainful Activity

At step one, a claimant must demonstrate that he has not engaged in substantial gainful activity at any time since the alleged date of disability onset. Here, the ALJ cited earnings records demonstrating Plaintiff worked in 2011, earning a total of $58,920.47, and that he continued to draw wages until his resignation from his job as truck driver on March 6, 2012. (TR. 15). Thus, the ALJ determined Plaintiff's onset date must be changed to March 6, 2012. The ALJ considered the evidence from that date through the date of the decision. Plaintiff does not challenge the ALJ's step-one findings.

### B. Step Two—Severity of Impairments

At step two, an ALJ must determine whether a claimant has an impairment or combination of impairments that is "severe" within the meaning of the regulations. An impairment or combination of impairments is "severe" if it significantly limits an individual's ability to perform basic work activities. The ALJ determined that Plaintiff's impairments—substance induced mood disorder; generalized anxiety disorder (rule out

substance induced); borderline personality disorder; and substance addiction disorders, including alcohol abuse and marijuana abuse—*in combination*, "constitute a 'severe' impairment as that term is defined by the Commissioner for the purpose of satisfying step two of the sequential evaluation process." (TR. 15).

Plaintiff alleged he also had physical impairments—hypertension, low thyroid, right arm injury, and right arm limited range of movement. (TR. 16). The ALJ also discussed Plaintiff's obesity and noted his duty to consider the functional impact of obesity on his other physical impairments. After a thorough review of the evidence related to Plaintiff's physical impairments, the ALJ found those impairments, considered either individually or in combination, were not severe. (TR. 18).

### C. Step Three—The Listings

To be found disabled at step three of the sequential evaluation, a claimant must establish that his impairments meet or equal all the characteristics of one of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listings). (TR. 18).

At step three, the ALJ considered the Listings relevant to Plaintiff's allegations of nonexertional limitations caused by mental disorders: Listing 12.00, Mental Disorders in general; Listing 12.04, Substance Induced Mood Disorder; Listing 12.06, Generalized Anxiety Disorder; Listing 12.08, Borderline Personality Disorder; and Listing 12.09, Substance Addiction Disorders, including Alcohol Abuse and Marijuana Abuse, specifically. (Tr. 18). The ALJ used the Psychiatric Review Technique, as required by the

regulations, thoroughly discussed the medical evidence relevant to Plaintiff's nonexertional impairments, and determined that Plaintiff's combined impairments do not meet or equal any of the Listed impairments. (TR. 18-21).

### D. Step Four—Residual Functional Capacity and Past Relevant Work

At step four of the sequential evaluation, the ALJ must determine a claimant's residual functional capacity (RFC)—the ability to do physical and mental work activities on a sustained basis despite limitations caused by his impairments. If a claimant can do his past relevant work, he is not disabled.

Because Plaintiff's nonexertional impairments include drug addiction and alcoholism,[1] (DAA), however, the ALJ in this case was also required to determine whether the effects of these impairments were "material" to the determination of disability. *See* 42 U.S.C. § 1382c(3)(J); 20 C.F.R. §§ 404.1535(a); 416.935(a). A claimant cannot be considered disabled if DAA is a contributing factor material to a finding of disability:

> The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find a claimant disabled if he or she stopped using drugs or alcohol. DAA is not material to the determination that the claimant is under a disability if the claimant would still meet our definition of disability.

SSR 13-2P, 2013 WL 621536, at *4 (2013). The Program Operations Manual System (POMS) provides guidance to ALJs in cases involving DAA. *See* POMS § 90070.050.

---

[1] Plaintiff does not dispute the ALJ's finding that the medical records demonstrate Plaintiff has been diagnosed with DAA.

First, the ALJ must decide if the claimant is disabled, following the general disability case development and evaluation procedures, including the effects of DAA. POMS § 90070.050(B)(1). Second, the ALJ must decide if there is "medical evidence of DAA." *Id.* § 90070.050(B)(2). Finally, if there is medical evidence of DAA, the ALJ must re-evaluate the claimant's impairments as if he had stopped using drugs and alcohol and on that basis, decide whether the DAA is a contributing factor material to the disability. *Id.* § 90070.050(B)(3); SSR 13-2p. 20 C.F.R. §§ 404.1535(b)(2); 416.935(b)(2).

As required by law, the ALJ first considered what Plaintiff's residual functional capacity (RFC) would be, taking into account the effects of Plaintiff's DAA:

> After careful consideration of the entire record, the undersigned finds that based on all impairments, including claimant's substance addiction disorders of alcohol abuse and marijuana abuse, the claimant has the residual functional capacity to perform the full range of work at all exertional levels, but with the following non-exertional limitations: the claimant can understand, remember, and carry out simple instructions. The claimant cannot respond appropriately to supervision. The claimant cannot respond appropriately to co-workers. The claimant cannot respond appropriately to the general public.

(TR. 21). With this RFC, the ALJ determined, based on the testimony of a vocational expert (VE), that the demands of Plaintiff's past relevant work as a truck driver exceeded Plaintiff's RFC. (TR. 27).

The ALJ then considered whether Plaintiff's mental impairments would still be "severe" absent the effects of DAA. He concluded that Plaintiff's remaining nonexertional limitations "would not cause more than a minimal impact on claimant's ability to perform basic work activities." Plaintiff would not, therefore, have been able to

demonstrate that he had a "severe" impairment, or combination of impairments, and the sequential evaluation would have ended at the second step of the sequential evaluation process with a finding of "not disabled." (TR. 29).

In the alternative, the ALJ considered the outcome of a disability determination if Plaintiff were able to demonstrate at step two that his remaining nonexertional impairments were "severe" without considering the effects of DAA. Under this scenario, the ALJ would have continued to step three where he would have determined that Plaintiff's remaining impairments, even in combination, would not meet or equal any of the listed impairments. (TR. 34).

Continuing to step four under the alternative scenario, the ALJ formulated a new RFC:

> If the claimant stopped the substance use, and even if the claimant's remaining medically determinable mental impairments were "severe," the undersigned would find that the claimant would still have the residual functional capacity to perform a full range of work at all exertional levels with the following non-exertional abilities: the claimant could understand remember, and carry out simple instructions; the claimant could make judgments that are simple work related decisions; the claimant could respond appropriately to supervision, co-workers, and usual work situations; the claimant could deal with changes in a routine work setting; and the clamant [sic] could have only superficial contact with the general public.

(TR. 37).

But the ALJ concluded at the final phase of step four that Plaintiff still could not perform the duties of his past relevant work. (TR. 43).

At that point, the ALJ completed the analysis under his alternative scenario by proceeding to the fifth and final step of the sequential evaluation process.

### E. Step Five—Other Jobs in the National Economy

At step five, the burden shifts to the Commissioner to demonstrate there are other jobs existing in the national economy that a claimant could perform, even though he cannot perform his past relevant work. If there are no such jobs, then the claimant is disabled.

Under the alternative scenario, the ALJ found there would be a significant number of jobs in the national economy that Plaintiff could perform even with the existing nonexertional limitations. Based on the testimony of a vocational expert (VE), the ALJ found Plaintiff could perform representative jobs such as an Inspector and Hand Packager, Bench Assembler, and Masker of Electrical Components. (TR. 44).

Accordingly, the ALJ concluded that Plaintiff was not entitled to social security benefits as a matter of law because DAA was a factor materially contributing to a finding of disability:

> The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use. (20CFR 404.1520(g), 404.1535, 416.920(g), and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision.

(TR. 44).

7

## III. ISSUES PRESENTED

On appeal, Plaintiff contends the ALJ's RFC determination is flawed because the ALJ did not include "work-related limitations for all the severe impairments." (ECF No. 17:7). According to Plaintiff, this error was caused by the ALJ's failure "to incorporate the great weight physicians [sic] impairments" in the RFC. (ECF No. 17:7-14).

Plaintiff next challenges the ALJ's decision on the basis that the ALJ allegedly "did not conduct the required function-by-function assessment of Mr. Baringer's impairments or address the maximum amount of each work-related activity he could perform." (ECF No. 17:15-16).

Plaintiff's third assignment of error is that the ALJ failed "to properly review the opinion evidence with RFC." (ECF No. 17:16-19).

In his fourth and final assignment of error, Plaintiff contends the ALJ's findings regarding drug use are not supported by substantial evidence. (ECF No. 17:19-25).

## IV. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if

other evidence in the record overwhelms the evidence upon which the ALJ relied, or if there is a mere scintilla of evidence supporting the decision. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). "Evidence is not substantial if it is overwhelmed by other evidence in the record." *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V. ANALYSIS

### A. The ALJ's RFC

Plaintiff articulates his "primary argument" as follows:

[T]he ALJ violated the requirement of Social Security Ruling (S.S.R.) 96-8p that "nonexertional capacity [which includes limitations from Mr. Baringer's mental impairments and moderate impairments in social functioning and concentration, persistence and pace] must be expressed in terms of work-related functions" in the RFC, nor does it incorporate the great weight physicians limitations.

(ECF No. 17:3).

Although the argument as stated is not entirely clear, Plaintiff seems to find fault with the ALJ's alternative RFC determination. Plaintiff contends the RFC is "devoid of any

mental limitation whatsoever." (ECF No. 17:8). Plaintiff misrepresents the ALJ's RFC. The ALJ specifically included work-related nonexertional limitations, even in the RFC formulated without taking into consideration the effects of DAA:

> [T]he claimant could understand, remember, and carry out simple instructions; the claimant could make judgments that are simple work related decisions; the claimant could respond appropriately to supervision, co-workers, and usual work situations; the claimant could deal with changes in a routine work setting; and the claimant could have only superficial contact with the general public.

(TR. 37). These are examples of mental limitations found by the ALJ.

Defendant Commissioner has accurately summarized the medical evidence, and that summary need not be repeated here. (ECF No. 20:2-6). The medical evidence provides substantial support for the ALJ's RFC determination.

For example, Dr. R. Keith Green, Ph.D., conducted a psychological examination of Plaintiff for purposes of assessing his nonexertional limitations. Dr. Green found Plaintiff's depression and agitation affected his attention and pace, but found Plaintiff's thought processes to be goal-directed, coherent, and logical. He found Plaintiff's reasoning and concentration were intact. (TR. 474). Dr. Green noted that Plaintiff's statement that he was a "social drinker" and had quit using marijuana, were inconsistent with other medical records. (TR. 475). Dr. Green concluded Plaintiff was not a "reliable historian." (TR. 475). Dr. Green also concluded that Plaintiff demonstrated the ability to retain and carry out simple, detailed, and more complex instructions. (TR. 476). These are examples of mental limitations that Plaintiff contends are missing in the ALJ's RFC. Therefore, Plaintiff's characterization of the ALJ's RFC is simply wrong.

Plaintiff's statement that the RFC did not "incorporate the great weight physicians impairments" is apparently based on Plaintiff's allegation that the ALJ, "in giving great weight to the state agency doctors, gave great weight to opinions that found that Mr. Baringer was moderately limited in nine (9) varying factors ... and could not perform the detailed work tasks the ALJ found." (ECF No. 17:14). Plaintiff cites a Mental Residual Functional Capacity Assessment (MRFCA) completed by Joseph Kahler, Ph.D., in support of this argument. (TR. 495-496). The MRFCA includes a checklist of various mental work-related functions and instructs the practitioner to rate each one on a scale of "not significantly limited" to "markedly limited" if there is any evidence of limitation in the specific category. On the checklist, Dr. Kahler marked nine work-related functions as "moderately limited." Dr. Kahler also completed the Functional Capacity Assessment in which he was instructed to explain his summary conclusions in narrative form. He did so, quite thoroughly. And the narrative Dr. Kahler wrote is entirely consistent with the ALJ's RFC, which included nonexertional limitations expressed in terms of the types of work Plaintiff could perform. The Tenth Circuit has recently reaffirmed that this method of incorporating moderate nonexertional limitations in functioning in the RFC is acceptable:

> This approach is acceptable in our circuit, for we have held in a published opinion that an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity. See *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("[T]he [administrative law judge] accounted for [the claimant's] moderate concentration, persistence, and pace problems in his [assessment of residual functional capacity] by limiting [the claimant] to unskilled work."). In *Lee v. Colvin*, [No. 15-6027, 2015 WL 7003410 (10th Cir. Nov. 15, 2015) (unpublished))] we applied this approach, concluding that the administrative law judge did not err by incorporating the moderate

limitations in restricting the claimant to jobs involving complex tasks, close supervision, or meaningful interaction with supervisors or peers. Based on the reasoning in *Lee v. Colvin*, we reject [the claimant's] argument that the administrative law judge should have assessed additional nonexertional impairments.

*Smith v. Colvin*, 2016 WL 2620519, at *4 (10th Cir. May 9, 2016) (to be published).

## B. The Function-by-Function Assessment

Plaintiff cites an unpublished Tenth Circuit case to support his contention that the ALJ erred in failing to separately consider the seven strength demands of all work activity—sitting, standing, walking, lifting, carrying, pushing and pulling—and in failing to specify the maximum amount of each work-related activity Plaintiff could perform. *See Alexander v. Barnhart*, 74 Fed. Appx. 23, 28, 2003 WL 22087496, at *5 (10th Cir. 2003) ("at step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of sedentary, 'light' 'medium,' 'heavy,' and 'very heavy' work." *quoting* SSR 96–8p, 1996 WL 374184, at *3)).

In *Alexander*, however, the ALJ had limited the claimant to "light work" with no consideration of the functional demands of light work or the impairments that limited the claimant to light work. Here, in contrast, the ALJ thoroughly discussed the medical evidence regarding Plaintiff's alleged physical impairments, including the effect obesity had on those impairments, and concluded that Plaintiff could perform the "full range of work at all exertional levels. . ." (TR. 21). Because the ALJ found Plaintiff had no physical limitations, a formal analysis of the seven strength demands was unnecessary.

This argument has no merit. The ALJ's determination is supported by substantial evidence.

### C. Opinion Evidence

Plaintiff's third assignment of error is a permutation of his first argument. He states the ALJ failed to "properly review the opinion evidence with RFC." (ECF No. 17:16-19). Though this sentence standing alone is effectively meaningless, Plaintiff again argues "[t]he ALJ erred in giving the agency doctors 'great' weight because the agency and consultative doctors never properly expressed any *work-related limitation* in their RFC for the mental impairment that the ALJ found severe." (ECF No. 17:16). As discussed above the Tenth Circuit has soundly rejected this argument.

Plaintiff then asserts the ALJ "failed to resolve the 'inconsistencies' or explain 'why symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." (*quoting* SSR 86-8p). (ECF No. 17:17). What Plaintiff may be asserting is that some of the opinion evidence and medical records indicated greater functional limitations attributable to Plaintiff's nonexertional impairments than those the ALJ included in the RFC. Plaintiff refers to "severe" anxiety and "numerous GAF (Global Assessment of Functioning) scores." *Id.* But Plaintiff neglects the fact that the evidence to which he refers was evidence of Plaintiff's functioning when he was using drugs and alcohol. The ALJ did include those limitations when he formulated Plaintiff's RFC to reflect his functional limitations when the effects of DAA were combined with the effects of his other, nonexertional

limitations. (TR. 21). The ALJ did not err in his assessment of the medical opinions. The ALJ properly considered the fact that Plaintiff's symptoms stabilized when he abstained from drug and alcohol abuse. The medical record demonstrates a clear pattern of waxing and waning symptoms correlated to periods of drug and alcohol use and periods of abstinence. *See* "Summary of Relevant Medical Evidence Before the ALJ," (ECF No. 20:2-6).

### D. Evidence Regarding Functional Effects of DAA

In his last assignment of error, Plaintiff seems to be arguing that the ALJ's finding that DAA is a contributing factor material to the determination of disability, is not supported by substantial evidence. Plaintiff argues, illogically, that "[t]he ALJ's finding regarding drug use is not supported by substantial evidence because he used the same evidence for both findings." (ECF No. 17:19). Specifically, Plaintiff points to the ALJ's findings when assessing the Part B criteria of the relevant Listings regarding mental impairments. Plaintiff intimates the ALJ's findings of moderate limitations in social functioning and concentration, persistence and pace and 1-2 episodes of decompensation were somehow improperly left out of the alternative RFC finding. *Id.*

As discussed in detail above, medical evidence of DAA triggers an ALJ's duty to analyze evidence of disability precisely as the ALJ analyzed the evidence here. Having found Plaintiff could not engage in substantial gainful activity when the effects of DAA were considered in combination with the effects of Plaintiff's other medically determinable mental impairments, the ALJ then considered the evidence of mental

impairments to see if Plaintiff would still be unable to engage in substantial gainful activity absent the effects of DAA.

As the ALJ noted, the medical evidence—including hospitalizations due to substance abuse, diagnoses of substance-induced mood disorder, toxicology screens positive for barbiturates, and benzodiazepines during a hospitalization—all support the ALJ's finding that in Plaintiff's case, DAA was a contributing factor material to the determination of disability.

In sum, the ALJ's decision is legally sound and supported by substantial evidence in the record. The Commissioner's decision is **AFFIRMED**.

ENTERED on June 22, 2016.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE